IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARLA ENGLISH,                    )
                                  )
                Plaintiff,        )
                                  )
     v.                           )        1:22CV237
                                  )
KILOLO KIJAKAZI,                  )
Acting Commissioner of Social     )
Security,                         )
                                  )
                Defendant.        )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Marla English, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 11; see also Docket Entry 10-1 (Plaintiff's Memorandum); Docket Entry 12 (Defendant's Memorandum); Docket Entry 13 (Defendant's Sugg. of Subsequently Decided Auth. (citing Rogers v. Kijakazi, 62 F.4th 872 (4th Cir. 2023)))). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 219-28), alleging a disability onset date of December 18, 2018 (<u>see</u> Tr. 219, 222). Upon denial of that application initially (Tr. 74-91, 118-21) and on reconsideration (Tr. 92-117, 123-27), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 133-34). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 41-73.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 18-35.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 215-16), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2024.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since December 18, 2018, the alleged onset date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: Degenerative Disc Disease; Post-Traumatic Stress Disorder (PTSD); Anxiety/Panic Disorder and Depression.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .

2

5. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . except that she can frequently climb ramps and stairs and can occasionally climb ladders, ropes and scaffolds. [Plaintiff] can frequently balance, stoop, kneel, crouch and crawl. [Plaintiff] can work in an environment with a moderate noise level. [Plaintiff] can occasionally work at unprotected heights and around moving, mechanical parts. [Plaintiff] can perform simple and routine tasks and can maintain attention, concentration and persistence to perform such tasks at a non-production rate pace meaning, no assembly line type or quota based work. [Plaintiff] can occasionally interact with supervisors, coworkers and the public. [Plaintiff] can adapt to infrequent changes in work routine.

. . .

6. [Plaintiff] is capable of performing past relevant work as a Deliverer ([Dictionary of Occupational Titles ("DOT")] # 230.663-010), [Specific Vocational Preparation ("SVP")] 2, light (as performed, very heavy). This work does not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity.

. . .

In addition to past relevant work, there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform, considering [Plaintiff]'s age, education, work experience, and residual functional capacity.

. . .

7. [Plaintiff] has not been under a disability, as defined in the . . . Act, from December 18, 2018, through the date of this decision.

(Tr. 23-34 (bold font and internal parenthetical citations omitted).)

3

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Even given those limitations, the Court should remand this case for further administrative proceedings.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the

4

case before a jury, then there is substantial evidence." Hunter,
993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not
undertake to re-weigh conflicting evidence, make credibility
determinations, or substitute its judgment for that of the [ALJ, as
adopted by the Social Security Commissioner]." Mastro, 270 F.3d at
176 (internal brackets and quotation marks omitted). "Where
conflicting evidence allows reasonable minds to differ as to
whether a claimant is disabled, the responsibility for that
decision falls on the [Social Security Commissioner] (or the ALJ)."
Id. at 179 (internal quotation marks omitted). "The issue before
[the Court], therefore, is not whether [the claimant] is disabled,
but whether the ALJ's finding that [the claimant] is not disabled
is supported by substantial evidence and was reached based upon a
correct application of the relevant law." Craig v. Chater, 76 F.3d
585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that
"[a] claimant for disability benefits bears the burden of proving
a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981),
and that, in this context, "disability" means the "'inability to
engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be
expected to result in death or which has lasted or can be expected
to last for a continuous period of not less than 12 months,'" id.

5

(quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering

_____

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[4]

## B.  Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he [ALJ] erred in failing to adequately explain the reasons for not giving significant weight to [Plaintiff]'s disability rating from the [Department of Veterans Affairs ('VA')] as required under *Bird[ v. Commissioner*, 699 F.3d 337 (4th Cir. 2012)" (Docket Entry 10-1 at 4 (underscoring omitted)); and

2) "[n]ew and material evidence requires remand of the claim to the Commissioner for consideration of th[at] evidence pursuant to sentence six of 20 [sic] U.S.C. [§] 405(g)" (<u>id.</u> at 10 (underscoring omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (<u>See</u> Docket Entry 12 at 14-25.)

---

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

## 1. **VA Rating Decision**

In Plaintiff's first issue on review, she maintains that "[t]he [ALJ] erred in failing to adequately explain the reasons for not giving significant weight to [Plaintiff]'s disability rating from the VA as required under *Bird*." (Docket Entry 10-1 at 4 (underscoring omitted).) More specifically, Plaintiff points out that she "was awarded a VA Disability Compensation and Rating of 100%, with a rating of 70% for her PTSD alone, and also rated as unemployable, with an effective rating of 100% disabled." (Id. (internal parenthetical citation omitted) (citing Tr. 388-93).) Plaintiff notes that, "[i]n *Bird*, the United States Court of Appeals for the Fourth Circuit . . . held that[,] 'in making a disability determination, the SSA must give substantial weight to a VA disability rating,' except that ['']an ALJ may give less weight . . . when the record before the ALJ clearly demonstrates that such a deviation is appropriate.'" (Id. at 5 (quoting Bird, 699 F.3d at 343).) Plaintiff additionally observes that the ALJ "considered [the VA disability rating] under *Bird*" (id. at 4 (referencing Tr. 31)), and "found the . . . rating somewhat persuasive" (id. at 5 (referencing Tr. 31)), but deemed the rating "not dispositive 'because the issue of one's disability is reserved to the Commissioner'" (id. (quoting Tr. 31)). In Plaintiff's view, the ALJ here erred in that regard, because *Bird* "did not provide ALJ's [sic] the latitude to provide less than substantial

9

weight to a VA rating based on the programmatic differences between the evaluation of VA disability claims and SS[A] disability claims." (Id.)

Plaintiff further contends that a neighboring district court "held that [an] ALJ committed reversible error by failing to afford substantial weight to the plaintiff's 100% VA rating," because the SSA's "repeal of Social Security Ruling 06-03p[, Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939 (Aug. 9, 2006) ('SSR 06-03p') (rescinded eff. Mar. 27, 2017, see 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017)), which provided that 'evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered,' id. at *6,] did not supersede the Fourth Circuit's decision in Bird." (Docket Entry 10-1 at 5-6 (citing Rose v. Saul, No. 7:19CV91, 2020 WL 4740479, at *3-4 (E.D.N.C. Aug. 14, 2020) (unpublished)).) According to Plaintiff, "the court in Rose noted that De[L]oatche v. Heckler[,] 715 F.2d 148, 150 (4th Cir. 1983) held that an ALJ must consider as evidence the disability determination of a state agency," and "[i]t is this line of holdings that is the basis of the Bird rationale, not SSR 06-03p." (Id. at 6.) For the reasons explained more fully below, Plaintiff's contentions fail as a matter of law.

In <u>DeLoatche</u>, the Fourth Circuit remanded the case, in part, because the ALJ failed to "consider the fact of the disability determination by the state of North Carolina," 715 F.2d at 150, and held that "the disability determination of a state agency [wa]s entitled to consideration by the [Commissioner]," <u>id.</u> at 150 n.1. In the <u>Bird</u> decision, the Fourth Circuit addressed for the first time the "weight that the SSA must afford to a VA disability rating." <u>Bird</u>, 699 F.3d at 343. After noting that the applicable regulation provided that the VA's "decision [wa]s not binding on the SSA," <u>id.</u> (citing 20 C.F.R. § 404.1504), and reviewing the "varying degrees of evidentiary significance" other circuits afforded VA disability ratings, <u>id.</u>, the Fourth Circuit held as follows:

> The VA rating decision reached in [the plaintiff's] case resulted from an evaluation of the same condition and the same underlying evidence that was relevant to the decision facing the SSA. Like the VA, the SSA was required to undertake a comprehensive evaluation of [the plaintiff's] medical condition. <u>Because the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency</u>. Thus, we hold that, in making a disability determination, the SSA must give <u>substantial weight</u> to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ <u>clearly demonstrates</u> that such a deviation is appropriate.

<u>Id.</u> (emphasis added).

Case 1:22-cv-00237-WO-LPA   Document 14   Filed 04/26/23   Page 11 of 40

Following <u>Bird</u>, the Fourth Circuit further clarified "what an ALJ must do" to clearly demonstrate the appropriateness of a deviation from <u>Bird</u>'s substantial weight standard in a case involving a state agency disability determination:

> We now conclude, consistent with our sister circuits, that in order to demonstrate that it is "appropriate" to accord less than "substantial weight" to a[ state agency] disability decision, an ALJ must give "<u>persuasive, specific, valid reasons for doing so that are supported by the record</u>."

<u>Woods v. Berryhill</u>, 888 F.3d 686, 692 (4th Cir. 2018) (quoting <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir. 2002)) (emphasis added); <u>see also</u> SSR 06-03p, 2006 WL 2329939, at *6-7 (providing that "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered," and that ALJ "should explain the consideration given to these decisions in the notice of decision").

For benefits claims filed on or after March 27, 2017 (such as Plaintiff's (<u>see</u> Tr. 219-28)), the SSA has amended 20 C.F.R. § 404.1504 and rescinded SSR 06-03p. <u>See</u> 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15263-01 (Mar. 27, 2017). The new regulation states that the SSA "will not provide <u>any</u> analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits," but "will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [it]

12

receive[s] as evidence in your claim." 20 C.F.R. § 404.1504 (emphasis added). Coordinately, in rescinding SSR 06-03p, the SSA noted that, for claims filed on or after March 27, 2017, ALJs "will not provide <u>any</u> articulation about their consideration of decisions from other governmental agencies and nongovernmental entities because this evidence is <u>inherently neither valuable nor persuasive</u>." 82 Fed. Reg. 15263-01 (emphasis added).

Following the enactment of the new regulation, a split of authority developed among the district courts within the Fourth Circuit regarding the continued applicability of the relevant holdings in <u>DeLoatche</u>, <u>Bird</u>, and <u>Woods</u> to claims filed on or after March 27, 2017, <u>compare</u> <u>Pizarro v. Kijakazi</u>, No. 5:21CV46, 2022 WL 966823, at *4 (E.D.N.C. Mar. 30, 2022) (unpublished) (deeming <u>Bird</u> "substantial weight" standard no longer applicable to claims filed on or after March 27, 2017, and noting "weight of authority favor[ed] th[at] approach"), <u>Rogers v. Commissioner of Soc. Sec.</u>, No. 3:20CV206, 2022 WL 135310, at *3 (W.D.N.C. Jan. 13, 2022) (unpublished) (same, and noting that "a trend [exists] in district courts across the country – including those in the Second, Third, Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits – that the revised regulations trump prior case law"), <u>aff'd</u>, 62 F.4th 872 (4th Cir. 2023), <u>Yonnes S. v. Saul</u>, No. 1:20CV819, 2021 WL 2767298, at *9 (E.D. Va. Mar. 31, 2021) (unpublished) (same), <u>and</u> <u>Johnson v. Saul</u>, C.A. No. 6:19-1155, 2020 WL 6265092, at *3 (D.S.C. June 3,

13

2020) (unpublished) (same), <u>recommendation adopted</u>, 2020 WL 5810523 (D.S.C. Sept. 30, 2020) (unpublished), <u>with</u> <u>Carter v. Kijakazi</u>, No. 1:20CV252, 2021 WL 3915009, at *4 (M.D.N.C. Sept. 1, 2021) (unpublished) (Peake, M.J.) (holding that, because "[t]he Fourth Circuit ha[d] not reconsidered [<u>Woods</u>, <u>Bird</u>, or <u>DeLoatche</u>] since the SSA's 2017 revisions, [those cases] therefore remain[ed] in full force"), <u>recommendation adopted</u>, 2021 WL 4412374 (M.D.N.C. Sept. 27, 2021) (unpublished) (Osteen, Jr., J.), <u>VanCleave v. Saul</u>, No. 1:20CV144, 2021 WL 2078004, at *3 (W.D.N.C. May 24, 2021) (unpublished) (same), <u>and</u> <u>Rose</u>, 2020 WL 4740479, at *2-4 (same).

In the setting of this split in authority, and notwithstanding the above-described change in the applicable regulation, the ALJ here invoked <u>Bird</u> in evaluating Plaintiff's VA disability rating decision:

> I recognize that [Plaintiff] was found to have a service connected disability rating by the [VA]. However, this award is not dispositive, because the issue of one's disability is reserved to the Commissioner . . . . Nevertheless, <u>I have considered it under Bird v. Commissioner of Social Security, 699 F.3d 337, 345 (4th Cir. 2012)</u>. In this case, the VA disability rating supports my finding that [Plaintiff]'s impairments cause certain limitations as set forth in the [RFC ]. Therefore, I find the VA disability rating somewhat persuasive.

(Tr. 31 (internal parenthetical citation omitted) (emphasis added).)

The Fourth Circuit has now squarely addressed the continued applicability of the relevant holdings in <u>DeLoatche</u>, <u>Bird</u>, and

<u>Woods</u> to claims filed on or after March 27, 2017.  In <u>Rogers</u>, that
court held as follows:

> . . . [T]he [] ALJ acknowledged the VA's determination
> that [the plaintiff wa]s 100% disabled and observed that
> it could 'never be entitled to controlling weight,' [but
> t]he ALJ nonetheless gave some consideration to the VA's
> determination, as the ALJ commented — without elaboration
> or explanation — that it was 'only partly persuasive.'
> The ALJ thereby complied with the new SSA rules, under
> which the VA's determination could have been
> disregarded[, b]ut the ALJ disobeyed our precedents, as
> they would have required much more consideration and
> discussion of the VA's determination and a detailed
> justification for not according it substantial weight.
>
> . . .
>
> At bottom, if our *DeLoatche*, *Bird*, and *Woods* precedents
> remain controlling as to SSA claims (like [the
> plaintiff]'s) filed on or after March 27, 2017, the SSA
> ALJ was required to consider and thus also discuss the
> VA's determination that Rogers is 100% disabled.  In such
> a situation, the ALJ was obliged to accord substantial
> weight to the VA's disability determination unless the
> record before the ALJ clearly showed that some lesser
> weight was appropriate.  And the ALJ could demonstrate
> the appropriateness of according some lesser weight only
> by stating persuasive, specific, and valid reasons for
> doing so that found support in the record.  If, however,
> the new SSA rules abrogate our precedents as to claims
> filed on or after March 27, 2017, the ALJ was not
> required to consider — much less discuss or accord any
> weight to — the VA's disability determination.  Rather,
> the ALJ merely had to consider any evidence underlying
> the VA's disability determination that [the plaintiff]
> submitted in support of her SSA claim.
>
> Consequently, we are called upon to decide today whether
> our precedents or the new SSA rules apply to claims filed
> on or after March 27, 2017.  As did the district court,
> we look to the Supreme Court's 2005 [*National Cable &
> Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967
> (2005),] decision to resolve that issue.  Specifically,
> we utilize the standard outlined in *Brand X* for
> determining whether "[a] court's prior judicial
> construction of a statute trumps an agency construction."

15

Pursuant to the *Brand X* standard, we must assess whether our precedents "hold[ ] that [their] construction follows from the unambiguous terms of the [ Act] and thus leaves no room for agency discretion." Quite clearly, our precedents do not so hold. And that makes sense, in that the Act itself does not address how or even if the SSA must deal with another agency's disability determination.

Next, then, we assess under the *Brand X* standard whether the new SSA rules are "otherwise entitled to [] deference [under *Chevron, U.S.A., Inc. v. National Res. Def. Council, Inc.*, 467 U.S. 837 (1984)]." Where, as here, "the statute is silent or ambiguous with respect to the specific issue," *Chevron* identifies "the question for the court" as being "whether the agency's answer is based on a permissible construction of the statute."

. . .

[The plaintiff] has not offered a cogent basis for withholding *Chevron* deference from the new SSA rules, and we perceive none. The new rules are a type that Congress empowered the SSA Commissioner to adopt, they are not manifestly contrary to any provision of the . . . Act, and they do not strike us as arbitrary and capricious in any way. Notably, it matters not that the new rules constitute a reversal of prior SSA directives, for as *Brand X* explains, "[a]gency inconsistency is not a basis for declining to analyze the agency's interpretation under the *Chevron* framework." So long as "the agency adequately explains the reasons for a reversal of policy" — as the SSA plainly has done here — "change is not invalidating, since the whole point of *Chevron* is to leave the discretion provided by the ambiguities of a statute with the implementing agency."

In these circumstances, we are constrained to conclude under *Brand X* that <u>our precedents do not trump the new SSA rules</u>. That is, we agree with the district court that <u>the new rules supersede our precedents and thus apply to claims filed on or after March 27, 2017</u>. We also must agree that <u>the [] ALJ applied correct legal standards and committed no error in adhering to the new rules and declining to accord substantial weight to the VA's determination that [the plaintiff] is 100% disabled</u>.

16

<u>Rogers</u>, 62 F.4th at 874-80 (emphasis added) (footnote and internal citations omitted).

Accordingly, even though the ALJ considered Plaintiff's VA disability rating decision under <u>Bird</u> (<u>see</u> Tr. 31), pursuant to the applicable version of Section 404.1504, the Court need only determine whether the ALJ "consider[ed] all of the supporting evidence underlying the [VA]'s decision that [the ALJ] receive[d] as evidence in [Plaintiff's] claim," 20 C.F.R. § 404.1504. The ALJ's decision makes clear that she considered all evidence in the record, including Plaintiff's VA records dating from one year prior to the alleged onset date to the date of the ALJ's decision. (<u>See</u> Tr. 28-30; <u>see also</u> Tr. 486-508, 535-701, 717-910, 1024-1103.) Section 404.1504 requires nothing more of the ALJ.

In short, Plaintiff's first assignment of error fails to warrant relief.

## 2. New and Material Evidence

In Plaintiff's second and final assignment of error, she contends that "[n]ew and material evidence requires remand of the claim to the Commissioner for consideration of th[at] evidence pursuant to sentence six of 20 [sic] U.S.C. [§] 405(g)." (Docket Entry 10-1 at 10 (underscoring omitted).) In particular, Plaintiff asserts that she "submitted a detailed mental impairment questionnaire [('Questionnaire')], completed by her long-time treating psychiatrist [sic], Erika Ast, M.D. [sic], to the Appeals

17

Council" (id. at 11 (citing Tr. 7-12)),[5] in which "Dr. Ast opine[d] that [Plaintiff] ha[d] marked impairments in all of the mental domains of functioning considered under the 'B' criteria of Listing 12.15 for PTSD" (id. at 11 (citing Tr. 10-11)), and "that [Plaintiff]'s PTSD me[t] the 'C' criteria of [ L]isting[ 12.15] as well" (id. at 11-12 (citing Tr. 12)). According to Plaintiff, "[a] reviewing court may remand a case to the Commissioner for consideration of additional evidence if four conditions are met: (1) the evidence must be relevant to disability and not merely cumulative; (2) the evidence must be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her; (3) [Plaintiff] must be able to show good cause for submitting the evidence late; and (4) [Plaintiff] must make a general showing of the nature of the evidence to the reviewing court." (Id. at 10-11 (brackets omitted) (citing Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985)).) In Plaintiff's view, "[a]ll criteria under the *Borders* analysis are met in this case" (id. at 11) and thus Plaintiff argues that "the claim should be remanded to the Commissioner for further hearing and evaluation of this new and material evidence that was not considered or exhibited by the Commissioner previously" (id. at 14). For the reasons more fully explained below, the Court should

---

[5] Dr. Ast practices in psychology rather than in psychiatry. (See Tr. 490.)

18

remand this matter for the ALJ to consider the Questionnaire under sentence _four_ rather than sentence _six_ of 42 U.S.C. § 405(g).

As an initial matter, the parties disagree whether sentence _four_ or _six_ of Section 405(g) constitutes the proper authority under which to evaluate the Questionnaire. (Compare id. (arguing that sentence _six_ remand applies, because Questionnaire "was not considered or exhibited by the Commissioner previously" (emphasis added)), with Docket Entry 12 at 19 n.7 (contending that, instead, sentence _four_ of Section 405(g) applies, because "Plaintiff incorrectly frame[d] her second legal argument as a sentence-six issue, but it is in fact an argument about new evidence to the Appeals Council, evidence that has already been considered by the Commissioner" (emphasis added) (internal citations omitted)).) As the parties recognize, the difference between the two different types of remands lies in whether the Appeals Council has already considered the new evidence and incorporated that evidence into the record before the Court. Where the Appeals Council has considered and incorporated the new evidence, the Court must address the new evidence under sentence _four_ of Section 405(g). See Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011) (noting that court would apply sentence _four_ standard and "review the record as a whole including any new evidence that the Appeals Council specifically incorporated . . . into the administrative record" (emphasis added) (internal quotation marks omitted)); Wilkins v. Secretary, Dep't of

19

Health & Hum. Servs., 953 F.2d 93, 96 (4th Cir. 1991) ("The Appeals
Council specifically incorporated [the treating psychiatrist]'s
letter . . . into the administrative record.  Thus, we must review
the record as a whole, including the new evidence, in order to
determine whether substantial evidence supports the
[Commissioner]'s findings." (emphasis added)).  In contrast, if the
Appeals Council declined to consider and to incorporate the new
evidence into the record, the Court must evaluate the new evidence
under sentence six of Section 405(g).  See Shalala v. Schaefer, 509
U.S. 292, 297 n.2 (1993) ("Sentence-six remands may be ordered
. . . where new, material evidence is adduced that was for good
cause not presented before the agency." (citations omitted));
Farrell v. Astrue, 692 F.3d 767, 770 (7th Cir. 2012) ("Evidence
that has been rejected by the Appeals Council cannot be considered
[under sentence four] to reevaluate the ALJ's factual findings.").
As described more fully below, the circumstances surrounding the
Appeals Council's handling of the Questionnaire favors a finding
that the Appeals Council considered and incorporated the
Questionnaire into the record and thus that the Court should
evaluate the Questionnaire under the sentence four framework.

Plaintiff's counsel requested review with the Appeals Council
on August 9, 2021 (Tr. 215-16) and, on that same date, the Appeals
Council sent Plaintiff's counsel a letter acknowledging the request
for review and allowing Plaintiff 25 days to submit "additional

20

evidence" that "is new, material, and relates to the period on or before the date of the hearing decision." (Tr. 13.) Additionally, the Appeals Council advised Plaintiff's counsel that he "must also show there is a reasonable probability that the additional evidence would change the outcome of the [ALJ's] decision," and "good cause for why [Plaintiff] missed informing [the SSA] about or submitting it earlier." (Id.) Thereafter, Plaintiff's counsel submitted the Questionnaire (which bears the date August 29, 2021 (see Tr. 12)) to the Appeals Council. (Tr. 7-12.)[6]

On the Questionnaire, Dr. Ast stated that she had treated Plaintiff from February 2019 until the time of the Questionnaire in August 2021, and had diagnosed Plaintiff with chronic PTSD, panic disorder, and major depressive disorder, recurrent, in partial remission. (See Tr. 7.) Dr. Ast explained that Plaintiff underwent group therapy, a family workshop, individual therapy, and prolonged exposure therapy with good results but that, after the Covid-19 pandemic started, Plaintiff experienced a worsening of her symptoms. (See id.) According to Dr. Ast, Plaintiff had not regained the progress she had made during pre-pandemic treatment. (See id.) Dr. Ast opined that Plaintiff's mental symptoms caused her to suffer marked limitations in all four functional areas of the paragraph "B" criteria of the applicable mental listings, i.e.,

_____

[6] The record does not divulge the date on which Plaintiff's counsel sent the Questionnaire to the Appeals Council, but Plaintiff must have sent it between the date of the Questionnaire (August 29, 2021 (see Tr. 12)), and the date of the Appeals Council's decision denying review (January 19, 2022 (see Tr. 1)).

understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (see Tr. 10-11), as well as to meet the paragraph "C" criteria of the listings (see Tr. 12). Dr. Ast believed that Plaintiff could not work an eight-hour per day, five-day per week schedule. (See id.)

The Appeals Council denied Plaintiff's request for review on January 19, 2022, remarking as follows:

> [Plaintiff] submitted [the Questionnaire] (6 pages). [The Appeals Council] find[s] this evidence does not show a reasonable probability that it would change the outcome of the decision. [The Appeals Council] did not exhibit this evidence.

(Tr. 2 (emphasis added).) Consistent with the language emphasized above, the Appeals Council noted that it "ha[d] received additional evidence which it [wa]s making part of the record," that "consist[ed] of . . . [the r]equest for review by the representative received on August 9, 2021 (2 pages)," which the Appeals Council exhibited as "Exhibit 13B" (Tr. 5 (emphasis added); see also Tr. 215-216 (Ex. 13B - request for review)). The Appeals Council did not include the Questionnaire on the list of items it "ma[de] part of the record." (Tr. 5.) Although the Appeals Council did not "exhibit" the Questionnaire (id.), it appears in the administrative transcript before this Court immediately following the Appeals Council's decision denying review and bears transcript page numbers seven through 12 (Tr. 7-12). See Hearings,

22

Appeals, and Litigation Law Manual ("HALLEX"), § I-3-5-20 ("Evaluation of Additional Evidence" (Dec. 16, 2020) (providing that Appeals Council "will evaluate all additional evidence it receives, but will only mark as an exhibit and make a part of the official record additional evidence it determines meets the requirements of 20 [C.F.R. §] 404.970(a)(5)-(b)," but that such evidence "will be included in the certified administrative record if the case is appealed to Federal court" (emphasis added)).

That chain of events presents the Court with two possible interpretations of the state of the record. On one hand, the Court could find that the Appeals Council 1) considered the Questionnaire by examining it and then "find[ing] that [it] d[id] not show a reasonable probability that it would change the outcome of the [ALJ's] decision" (Tr. 2), and 2) incorporated the Questionnaire into the record by including it in the administrative transcript before this Court immediately following the decision denying review (Tr. 7-12), such that Section 405(g)'s sentence four should apply. On the other hand, the Court could view the Appeals Council's refusal to "exhibit" the Questionnaire (Tr. 2) and to "mak[e the Questionnaire] part of the record" (Tr. 5) as an indication that the Appeals Council neither considered nor incorporated the Questionnaire into the record, thereby making sentence six the appropriate framework for decision. See Patricia C. v. Berryhill, No. 4:17CV58, 2019 WL 254981, at *2 & n.3 (W.D. Va. Jan. 2, 2019)

(unpublished) (observing that, where Appeals Council found new evidence "did not show a reasonable probability that it would change the outcome of the [ALJ's] decision" and "did not consider and exhibit th[e new] evidence," but copy of that evidence appeared in administrative transcript before the court, "[t]he Commissioner's practice of mixing into the certified copy of the record evidence that her agency has expressly refused to 'consider and exhibit[]' present[ed] an awkward procedural posture for judicial review" and, because the court "might [in the future] have to choose which part of § 405(g)'s text — sentence four or sentence six — governs th[e c]ourt's authority to review the Commissioner's final decision[,] . . . the [c]ourt welcome[d] the parties' input on how best to proceed under § 405(g) when the Commissioner files a certified transcript of the record of the underlying administrative proceedings that contains evidence the Appeals Council has explicitly declined to accept, consider, and/or incorporate into that record" (internal citations omitted)), recommendation adopted sub nom. Coleman v. Berryhill, 2019 WL 254672 (W.D. Va. Jan. 17, 2019) (unpublished).

Further complicating matters, the Fourth Circuit has evaluated cases pursuant to both sentence four and sentence six when confronted with new evidence first presented to the Appeals Council. Compare Wiebusch v. Commissioner, Soc. Sec. Admin., No. 20-1590, 2022 WL 2965653, at *2-3 (4th Cir. July 27, 2022)

24

(unpublished) (reviewing case under sentence _four_ standard where Appeals Council found new evidence consisting of treating physician questionnaire did not show reasonable probability it would change outcome of ALJ's decision but _not_ addressing sentence six or whether Appeals Council had considered or incorporated new evidence), _with_ Jackson v. Astrue, 467 F. App'x 214, 218 (4th Cir. 2012) (holding that, where Appeals Council rejected new evidence because it "d[id] not provide a basis for changing the [ALJ]'s decision[,] . . . [the court's] proper disposition is to remand pursuant to sentence _six_ of § 405(g) which authorizes a remand upon a showing of new material evidence" (emphasis added)).

District courts within the Fourth Circuit similarly take different approaches to cases involving new evidence presented to (but not exhibited by) the Appeals Council. See, e.g., Montoya v. Kijakazi, No. 1:20CV1157, 2022 WL 562945, at *7 (M.D.N.C. Jan. 11, 2022) (unpublished) (Webster, M.J.) (deciding case under sentence _four_ framework because "[the p]laintiff appear[ed] to be seeking a sentence _four_ remand," where Appeals Council failed to acknowledge new evidence submitted by the plaintiff and thus that evidence did not appear in administrative transcript, but also noting that "analysis and result [] would essentially be the same even if [the p]laintiff sought a remand pursuant to sentence _six_" (emphasis added)), recommendation adopted, 2022 WL 561533 (M.D.N.C. Feb. 24, 2022) (unpublished) (Biggs, J.); Donald C. v. Saul, No. 5:18CV63,

25

2019 WL 9056721, at *11 (W.D. Va. Aug. 19, 2019) (unpublished)
(finding that, because Appeals Council concluded that newly
submitted evidence did not raise reasonable probability of changing
outcome of case and "did not consider and exhibit th[at] evidence,"
the plaintiff's contention regarding the new evidence constitutes
"an argument that the case should be remanded under sentence six of
42 U.S.C. § 405(g) to enable the Commissioner to consider
additional evidence in the first instance" (emphasis added));
Lauder v. Saul, No. 1:18CV480, 2019 WL 3457706, at *9-10 (M.D.N.C.
July 31, 2019) (unpublished) (Peake, M.J.) (denying remand under
sentence four because "no meaningful possibility [existed] - much
less a reasonable probability - that the additional evidence would
change the outcome of the decision," even where Appeals Council did
not exhibit new evidence because it "d[id] not relate to the period
at issue" but new evidence appeared in administrative transcript),
recommendation adopted, slip op. (M.D.N.C. Aug. 22, 2019) (Eagles,
J.); Johnson v. Acting Comm'r of Soc. Sec. Admin., No. 9:18CV90,
2019 WL 2717860, at *6 n.4 (D.S.C. June 27, 2019) (unpublished)
("The Appeals Council ultimately decided that . . . it would not
'consider' or 'exhibit' the evidence because there was not a
reasonable probability it would change the outcome of the
case . . .   The Appeals Council therefore denied review and would
not consider this new evidence after making a determination that
the medical records provided no basis to change the ALJ's decision.

26

Further, the medical records are included in the transcript and noted as 'Medical Evidence of Record.' Accordingly, this remand is appropriate under sentence <u>four</u> of 42 U.S.C. § 405(g)." (underscoring added) (italics in original)); <u>Coleman v. Berryhill</u>, No. 6:17CV2613, 2019 WL 850902, at *5 (D.S.C. Feb. 22, 2019) (unpublished) (noting that Appeals Council did not incorporate new evidence into the record, but finding sentence <u>four</u> remand appropriate "because it was an error of law [for the Appeals Council] to not consider and exhibit such evidence"); <u>Hawks v. Berryhill</u>, No. 1:17CV1021, 2018 WL 6728037, at *5 n.6, *8 n.9 (M.D.N.C. Dec. 21, 2018) (unpublished) (noting that the plaintiff did not request sentence <u>six</u> remand and could "not argue [for a sentence <u>four</u> remand based on the fact] that the [new evidence], when considered as part of the administrative record as a whole, render[ed] the ALJ's decision unsupported by substantial evidence[,] . . . because . . . the Appeals Council <u>declined to incorporate the [new evidence] into the administrative record</u>" (emphasis added)), <u>recommendation adopted</u>, 2019 WL 359999 (M.D.N.C. Jan. 29, 2019) (unpublished) (Schroeder, C.J.); <u>Jones v. Berryhill</u>, No. 1:17CV703, 2018 WL 3849914, at *6-7 (M.D.N.C. Aug. 13, 2018) (unpublished) (denying remand under sentence <u>six</u> where Appeals Council found new evidence "d[id] not show a reasonable probability that it would change the outcome of the decision" and "<u>did not consider and exhibit</u> th[e new] evidence," and <u>administrative</u>

27

transcript before the Court did not contain new evidence),
recommendation adopted, slip op. (M.D.N.C. Sept. 4, 2018)
(Schroeder, C.J.); Brown v. Colvin, No. 7:14CV283, 2015 WL 7307320,
at *6 (E.D.N.C. Oct. 27, 2015) (unpublished) ("To the extent that
the lack of formal incorporation of the additional evidence into
the record signifies that it remains outside the record,
notwithstanding its inclusion in the transcript of proceedings,
this evidence is appropriately treated as having been submitted for
the first time to th[e] court and therefore as being subject to
sentence six of 42 U.S.C. § 405(g)," but also finding that
"[r]emand [wa]s [] warranted [under sentence four] if the [new
evidence was] deemed to have become part of the record by virtue of
the Appeals Council's consideration of [it], even if not formally
incorporated into the record" (emphasis added)), recommendation
adopted, 2015 WL 7306453 (E.D.N.C. Nov. 19, 2015) (unpublished).

On balance, four facts before the Court in this case favor
analyzing Plaintiff's new evidence under the sentence four
framework. First, unlike in Hawks and Jones, the Questionnaire
appears in the administrative transcript before the Court, albeit
in the "Court Transcript Index" portion rather than the "Exhibits"
portion of the record (see Tr. 7-12). The inclusion of the
Questionnaire in the Court's official record of proceedings lends
support to the notion that the Court can consider it as part of a
sentence four analysis. See West v. Berryhill, No. 18CV92, 2019 WL

28

362259, at *6 (D. Haw. Jan. 29, 2019) (unpublished) ("The [c]ourt notes that the Appeals Council also stated that [the new evidence] would not be exhibited. [The new evidence], however, can be found in the [administrative transcript] of this case. Unlike other medical evidence, though, [the new evidence is] not exhibited in the sense that [it] ha[s] been assigned an exhibit number, but, instead, placed in that part of the [administrative transcript] concerning 'Documents Related to Administrative Process Including Transcript of Oral Hearing, if applicable.' Nonetheless, as far as this [c]ourt is concerned, [the new evidence is] part of the certified transcript of record in this case. As a result, the [c]ourt may remand this case to the ALJ pursuant to Sentence <u>Four</u> . . . ." (emphasis added) (internal citations omitted)).

Second, unlike in <u>Donald C.</u> and <u>Jones</u>, the Appeals Council here did <u>not</u> explicitly state that it refused to <u>consider</u> and exhibit Plaintiff's evidence, only that it did not <u>exhibit</u> that evidence. (<u>See</u> Tr. 2.) The omission of the "did not consider" language from the Appeals Council's decision suggests that it did consider the Questionnaire in making its determination that the Questionnaire did not show a reasonable probability of a different outcome in the ALJ's decision. <u>See</u> <u>Vahey v. Saul</u>, No. 18CV350, 2019 WL 3763436, at *9 (D. Haw. Aug. 9, 2019) (unpublished) (observing that, in other cases, "the Appeals Council had stated that it did not 'consider and exhibit' the evidence; whereas, [in

29

the case before the court], the Appeals Council said only that it did not 'exhibit' the evidence").

Third, the applicable regulation requires the Appeals Council to consider new evidence only if the claimant shows "good cause" for failing to submit the evidence at least five days prior to the hearing before the ALJ,[7] and the Appeals Council here did not expressly find that Plaintiff lacked good cause to submit the Questionnaire (see Tr. 2). If the Appeals Council implicitly found that Plaintiff showed good cause for failing to submit the Questionnaire to the ALJ, then Section 404.970 required the Appeals Council to consider that evidence. See Vahey, 2019 WL 3763436, at *6 (noting that, under the new [version of Section 404.970], the Appeals Council could only 'consider' evidence upon a showing of good cause and, given that Appeals Council's "denial letter [wa]s devoid of any good cause discussion," the possibility existed that

---

[7] The applicable regulation provides, in pertinent part, as follows:

(a) The Appeals Council will review a case if—

. . .

    (5) Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

(b) The Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if [the claimant] show[s] good cause for not informing [the Appeals Council] about or submitting the evidence as described in § 404.935 [which requires claimants to submit evidence at least five days prior to the ALJ hearing].

20 C.F.R. § 404.970 (2017) (emphasis added).

30

the "Appeals Council implicitly found good cause [and ] considered the [new] evidence," thus making the evidence "part of the record").

Fourth, the Appeals Council must have <u>considered</u> the Questionnaire <u>on some level</u> in order to find that it did not raise a reasonable probability of a different outcome in the ALJ's decision. <u>See</u> <u>id.</u> at *8 ("Presumably, to decide that the [new evidence] would not change the outcome of the decision, the Appeals Council would have needed to 'consider' those records."); <u>Reyes v. Commissioner of Soc. Sec. Admin.</u>, No. 17CV8192, 2019 WL 2098755, at *3 (D. Ariz. May 14, 2019) (unpublished) ("The [c]ourt is unable to reconcile [the Appeals Council's] statement [that it did not consider the new evidence] with the previous sentence in the order finding that the evidence d[id] not show a reasonable probability of changing the ALJ's decision. . . . [T]he Appeals Council made a finding about the merits of the additional evidence and considered whether it would change the outcome of the decision. Therefore, it is part of the record." (internal citations omitted)); <u>Linnehan v. Berryhill</u>, No. 17CV4146, 2018 WL 6267846, at *8 (N.D. Cal. July 31, 2018) (unpublished) ("The Appeals Council cannot consider the evidence to conclude that it 'does not show a reasonable probability that it would change the outcome of the decision' and then exclude the evidence from the record based on the illogical conclusion that '[w]e did not consider and exhibit

31

this evidence.'"). Under these factual circumstances, the Court should analyze the Questionnaire under the framework of sentence four of Section 405(g).

"[B]ecause [the Appeals Council] denied review, the decision of the ALJ became 'the final decision of the [Commissioner].'" Meyer, 662 F.3d at 704 (quoting Wilkins, 953 F.2d at 96). A court should "uphold the factual findings underpinning the Commissioner's final decision 'if they are supported by substantial evidence and were reached through application of the correct legal standard.'" Id. (quoting Craig, 76 F.3d at 589). "In making th[at] determination, [the Court] 'review[s] the record as a whole' including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.'" Id. (quoting Wilkins, 953 F.2d at 96). Significantly, the Court "review[s] for substantial evidence the ALJ's decision, not the Appeals Council's denial of [the plaintiff]'s request that the Council review the ALJ's decision due to the newly submitted [Q]uestionnaire." Wiebusch, 2022 WL 2965653, at *2 n.3. For the reasons explained in more detail below, the Court should find that the Questionnaire renders the ALJ's findings at step three of the SEP regarding the functional impact of Plaintiff's mental impairments unsupported by substantial evidence.

Most significantly, the Questionnaire fills an evidentiary gap in the opinion evidence of record. The ALJ found the opinions of

32

the state agency psychological consultants that Plaintiff's mental impairments caused <u>moderate</u> limitations in mental functioning (<u>see</u> Tr. 81, 101) only "somewhat persuasive" (Tr. 31), noting that those opinions conflicted with Dr. Ast's opinion that Plaintiff qualified as unemployable (<u>see</u> Tr. 30-31; <u>see also</u> Tr. 486-87). In turn, the ALJ found Dr. Ast's unemployable opinion (<u>see</u> Tr. 486-87) only "somewhat persuasive," because Dr. Ast did not provide an "opinion . . . in vocationally relevant terms" (Tr. 32). The Questionnaire clearly sets forth Dr. Ast's opinions regarding Plaintiff's mental functioning "in vocationally relevant terms" (<u>id.</u>), as Dr. Ast rated Plaintiff's limitations using the same rating scale and areas of mental functioning as used by the SSA in evaluating the paragraph "B" criteria of the mental health listings. (<u>See</u> Tr. 10-11 (mirroring 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.00E, F).)

In <u>Meyer</u>, the Fourth Circuit remanded on the basis of a treating physician opinion letter first submitted to the Appeals Council, reasoning as follows:

> On consideration of the record as a whole, we simply cannot determine whether substantial evidence supports the ALJ's denial of benefits here. The ALJ emphasized that the record before it lacked "restrictions placed on the claimant by a treating physician," suggesting that this evidentiary gap played a role in [the ALJ's] decision. [The plaintiff] subsequently obtained this missing evidence from his treating physician[,] . . . [and] other record evidence credited by the ALJ conflicts with the new evidence.

33

Meyer, 662 F.3d at 707. As in Meyer, Plaintiff here has filled the evidentiary gap in the opinion evidence by supplying opinions from her treating psychologist set forth in vocationally relevant terms (see Tr. 7-12), and those opinions, finding marked limitations in all four areas of mental functioning (see Tr. 10-11), conflict with and undermine the ALJ's moderate step three findings (see Tr. 26), which the ALJ supported with the non-examining consultants' opinions the ALJ deemed only "somewhat persuasive" (Tr. 31 (emphasis added)).

Furthermore, the Questionnaire calls into substantial question the ALJ's observation that, "[a]fter the Covid pandemic began, [Plaintiff] had a significant increase in her symptoms [(Tr. 636-701)], but by the fall she typically presented with an euthymic mood [(Tr. 760-910, 1024-1103), and i]n December [2020], she reported she was doing well, with improved energy and mood [(Tr. 1094)]." (Tr. 30.) In the Questionnaire, Dr. Ast explained that Plaintiff had not regained the progress she had made in therapy prior to the pandemic:

> [Plaintiff] has participated in group psychotherapy, a family workshop, individual psychotherapy, and has completed the full Prolonged Exposure therapy (PE) protocol w[ith] this provider just before the pandemic started w[ith] good results. Once the pandemic started in M[arch] 2020, [Plaintiff]'s anxiety increased with her wife working longer shifts in a Covid unit and with no longer being able to challenge her avoidance through in vivo exercises she had started in PE, due to it no longer being safe to go out and around p[eople]. [Plaintiff] has not been able to regain the progress made in J[anuary] 2020 as a result of the pandemic and

34

participation in an Intensive Outpatient Program [] for PTSD is being considered as a result.

(Tr. 7 (emphasis added).)  That explanation directly conflicts with the ALJ's observation that, by the fall of 2020, Plaintiff typically displayed a euthymic mood and reported doing well (see Tr. 30).

Moreover, the treatment notes of Dr. Ast and other VA mental health providers support Dr. Ast's opinion that Plaintiff did not regain her pre-pandemic progress during the relevant period in this case and contradict the ALJ's remark that, in the fall of 2020, Plaintiff typically displayed a euthymic mood and reported doing well (see Tr. 30).  On October 5, 2020, Plaintiff reported to Dr. Ast that she had experienced "some really bad days" as well as "thoughts of suicide," and Dr. Ast observed that Plaintiff appeared "tired" and "less animated" with "slower speech" and "longer pauses."  (Tr. 794.)  On mental status examination, Dr. Ast recorded "depressed" mood.  (Tr. 795.)  On October 21, 2020, Plaintiff complained of problems with her memory which had resulted in her missing some appointments, and Dr. Ast referred Plaintiff to speech pathology to assist with those memory complaints.  (See Tr. 790.)  On examination, Dr. Ast documented "slower [speech] than . . . seen before with longer pauses" as well as "dysthymic" mood and "restricted" affect.  (Tr. 791.)  On November 10, 2020, Plaintiff reported "ongoing persistent anxiety and panic attacks," decreased sleep, and nightmares to Nurse Practitioner Maclean M.

35

Masese (Tr. 778), who observed a "constricted" mood (Tr. 781) and prescribed Trazodone for sleep and Clonazepam for "breakthrough anxiety" (Tr. 782). Moreover, on December 21, 2020, Plaintiff reported that she "had been doing well with improved energy, motivation, and mood," but that the prior and current week "ha[d] not been as good," and that she "fe[lt] like [she was] in cement." (Tr. 1093 (emphasis added) (internal quotation marks omitted).) As a result, Dr. Ast referred Plaintiff for Alpha-Stim therapy. (Id.)[8]

Additionally, on January 25, 2021, Plaintiff complained of daily panic attacks and increasing nightmares and intrusive thoughts as the March 22nd anniversary of her trauma approached (see Tr. 1086), as well as "struggling with irritability in general" (Tr. 1087). Based on those symptoms, Dr. Ast and Plaintiff "collaboratively determined she would participate in sessions every other week with psychology doctoral student [Brittney L. Roberson] toward the goal of working on [Plaintiff's] negative thoughts and beliefs." (Id.)[9] The record contains four

_____

[8] "According to its website, '[t]he Alpha-Stim electrotherapy device relieves post-traumatic, acute and chronic pain through painless electrical stimulation delivered via two handheld Smart Probes.'" Ort v. Commissioner of Soc. Sec. Admin., No. 3:18CV286, 2019 WL 4751776, at *5 n.2 (S.D. Ohio Sept. 30, 2019) (unpublished) (quoting www.alpha-stim.com (last visited Apr. 25, 2023)).

[9] The goal of obtaining more frequent therapeutic visits for Plaintiff with a doctoral student undermines the Commissioner's suggestion that "Dr. Ast, [] as far as the record reflects, based on Plaintiff's improvement, discharged her in April 2021 to the care of a doctoral student for future follow up for any challenging negative thoughts." (Docket Entry 12 at 22-23 (emphasis added) (citing Tr. 1036).)

treatment records with Roberson from February to April 2021, at which Plaintiff reported that she "ha[d] thought of suicide a lot [that ] day" and "felt overwhelmed, sad, and depressed" (Tr. 1075 (internal quotation marks omitted)), that she "fe[lt] drained from getting only 4-6 hours of sleep" (Tr. 1054) and "believe[d] it would benefit her most to participate [in PE therapy] after the pandemic stabilized" (Tr. 1055), that "[h]er current coping strategy [wa]s avoidance" and that "she [wa]s not ready for [PE] therapy, but w[ould] consider it following the pandemic" (Tr. 1042). Notably, Dr. Ast signed off on all of Roberson's treatment notes. (<u>See</u> Tr. 1036, 1044, 1057, 1077.)

Lastly, the ALJ (and the Commissioner (<u>see</u> Docket Entry 12 at 2)) places great emphasis on Plaintiff's ability to engage in activities during the relevant period, including taking a cruise with her wife (<u>see</u> Tr. 28), attending the state fair (<u>id.</u>), shopping at Walmart (<u>id.</u>), chaperoning a first grade trip (<u>id.</u>), taking her daughter to gymnastics practice (<u>id.</u>), hosting her father's birthday party (<u>id.</u>), trick or treating (<u>id.</u>), going to Carowinds amusement park and riding a roller coaster (<u>id.</u>), attending family day with the National Guard (<u>id.</u>), volunteering at basketball practice (<u>id.</u>), attending her wife's holiday party (<u>id.</u>), spending a week's vacation in California (<u>id.</u>), and visiting the beach (<u>see</u> Tr. 29). Neither the ALJ nor the Commissioner acknowledged the fact that Dr. Ast specifically <u>requested</u> that

37

Plaintiff engage in such activities as part of Plaintiff's in vivo homework exercises, a component of her PE therapy. (See Tr. 551-74.)  At each visit during PE, Plaintiff indicated that she experienced varying levels of subjective distress (subjective units of distress ("SUDs")) after participating in each activity, but continued to engage in them in order to challenge her pattern of avoidance, as instructed by Dr. Ast.  (See id.)  Dr. Ast specifically noted that, once the pandemic started, Plaintiff could no longer engage in as many social activities to challenge her avoidance, which led to an increase in her symptoms. (See Tr. 7.) Thus, Plaintiff's participation in those activities did not provide substantial evidence to support the ALJ's moderate limitations at step three.

In sum, the Questionnaire, when considered as part of the record as a whole, renders the ALJ's step three findings regarding Plaintiff's mental impairments unsupported by substantial evidence. Accordingly, the Court should remand this matter for further proceedings under sentence four of 42 U.S.C. § 405(g).  See Sales v. Saul, No. 1:19CV476, 2020 WL 4735308, at *4 (M.D.N.C. Aug. 14, 2020) (unpublished) (Webster, M.J.) ("[The p]laintiff submitted additional information to the Appeals Council some of which she contends relates to Listing 1.04A[, and t]he Appeals Council determined that such evidence d[id] not show a reasonable probability that it would change the outcome of the [ALJ's]

decision. The Court disagrees. There is a reasonable probability that [the p]laintiff meets Listing 1.04A and[,] . . . [t]herefore, there is a reasonable probability that the additional evidence would change the outcome of the decision. . . . None of this necessarily means that [the p]laintiff is disabled under the . . . Act and the Court expresses no opinion on that question. Nevertheless, the Court concludes that the proper course here is to remand this matter [under sentence <u>four</u> of 42 U.S.C. § 405(g)] for further administrative proceedings." (internal quotation marks and citations omitted)), <u>recommendation adopted</u>, slip op. (M.D.N.C. Sept. 1, 2020) (Eagles, J.).

## III. CONCLUSION

Plaintiff has demonstrated that the Questionnaire, when considered as part of the record as a whole, renders the ALJ's step three findings regarding Plaintiff's mental impairments unsupported by substantial evidence, warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated, and that this matter be remanded under sentence four of 42 U.S.C. 405(g) for further administrative proceedings, to include evaluation by the ALJ of the Questionnaire and, in light of the Questionnaire, reconsideration of 1) whether Plaintiff's mental impairments meet or medically equal any listings, and 2) Plaintiff's mental RFC. As a result, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) should be

39

granted in part (i.e., to the extent it requests remand), and Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) should be denied.

    /s/ L. Patrick Auld
    **L. Patrick Auld**
    **United States Magistrate Judge**

April 26, 2023